IN THE U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| Ning Ye | ) | |
|     Plaintiff | ) | 18-cv-1781 |
| v. | ) | Plaintiff's Opposition |
| PTLM W. Cuzco-Benites | ) | The. Hon. Mayellen Norieka |
| Police Department of New Castle County, DE | ). | |
| Detention Charging Officer, Mary Roe | ) | |
| Defendants | ) | |
| _____ | ) | |

## PLAINTIFFF'S OPPOSITION TO DEFENDANTS' REPEATED MOTION FOR SANCTIONS

Comes now, the Plaintiff, hereby respectfully opposes the Defendants' "repeated" "proverbial Titanic" under the name of "Motion for Sanctions", (Doc 58) an exactly identical "piling on more and more irrelevant and frivolous factual statements and legal claims—raising his voidable Motion for Sanctions, with the same length nineteen pages.

### Brief Intruduction

As one Chinese ancient fable goes: there is a street vendor selling both swords and shields in a market place 2500 some years ago.  That ultra-smart street vendor boasted the shields he was selling: "My shields are the world's strongest ones which can not be pieced through with any of the world's sharpest swords." afterwards, he raised his swords boasting: "My swords are the world's sharpest which can easily pierce through all the world's strongest shields." At that time, there came a not-so-smart passer-by, asking to that vendor: "what if use your sharpest sword to pierce your strongest shield?"

Now, the wonderful counsel for the Defendants present both the world's strongest shield as of Motion numbered ECF Doc 43 on 10/23/2020 (Exhibit 1) and his world's sharpest swords Motion number 58, together before this Honorable Court. In another words, Defendants presented both his Position Statement paper opposing ""repeated" "proverbial Titanic", followed with his own "repeated" "proverbial Titanic" before this Honorable Court by deliberately creating a "quintessential circumstance" to

1

display his exactly identical "piling on more and more irrelevant and frivolous factual statements and legal claims—raising his voidable Motion for Sanctions, with the same length nineteen pages."

**Discussion:**

Using Defendants' own logic by his own citation "repeated filing of substantially identical claims," is a quintessential circumstance where sanctions should be imposed. Napier v. Thirty or More Unidentified Federal Agents, etc., 855 F.2d 1080, 1091 (3d Cir. 1988). After raising his repeated proverbial Titanic Motion for Sanctions as Doc 58, "with no change", by repeating his nonsensical arguments contained in his exactly the same Motion as Doc. 43, Defendants may have anticipated, and Plaintiff will have to do, to restate his deliberation in his Opposition Brief.

Applying the same jurisprudence invoked by the Defendants, the Defendants, rather than anyone else, should be sanctioned following what Defendants advocated by themselves for sanctioning against the party who had committed repeated filing of identical papers to wastefully burden the Honorable Court. To impose Rule 11 sanctions and sanctions exclusively reserved for manger attorneys representing their clients pursuant to 38 USC 1927, and by this Honorable Court's own discretional power would be appropriate. Such sanctions, once imposed upon these Defendants, will showcased the Court's full respect to satisfy the Defendants' legal theory as what they truly deserve.

On the contrary, Plaintiff has never advocated that a Federal Court should impose any sanction against any parties who simply amended his Complaint dutifully following the Honorable Court's Order to Amend. Defendants don't have to consent to Plaintiff's Amendment, neither do Defendants have to be happy with the Court's permission for allowing Plaintiff to file his 2nd Amended Complaint, even given to the fact that our Federal trial Courts giving opportunity to Plaintiff to file 2nd, 3rd or even 4th Amended Complaint is neither unprecedented nor rare as the U.S. Supreme Court held that trial upon the merits are always preferred. Instead, Plaintiff believes that necessarily repeated filing with Amended version with changed or corrected claims

2

may serve the interests of justice in the light of due process. Numerous provisions of the Federal Rules accordingly permit parties and courts to present and resolve related claims in a single case. They permit a plaintiff to file "as many claims as it has against an opposing party," Fed. R. Civ. P. 18(a) Dickinson v. Petroleum Conversion Corp., 338 U.S. 507, 511 (1950).

The United States Court of Appeals for the Third Circuit has cautioned that Rule 11 sanctions are warranted "only in the 'exceptional circumstances' ... where a claim or motion is patently unmeritorious or frivolous." Doering v. Union County Bd. of Chosen Freeloaders, 857 F .2d 191, 194 (3d Cir. 1988) (internal citations omitted). A court must look to whether the imposition of sanctions would be reasonable under the circumstances. Id.

In Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court discussed at length the inherent powers of a court to sanction and their relationship to rule-based and statute-based powers to sanction, e.g., Rule 11, Rule 16, Rule 37, and *Section(s) 1927*. The Court observed, but apparently did not require, that normally a court should look first to those rule-based or statute-based powers before turning to its inherent powers, reserving the inherent powers for instances in which the rule-based or statute-based powers are not "up to the task."

The permissible scope of inherent powers is somewhat unclear; we have earlier observed that "the notion of inherent power has been described as nebulous, and its bounds `shadowy.'" Eash v. Riggins Trucking Inc., 757 F.2d 557, 561 (3d Cir. 1985) (en banc) (citation omitted). However, "courts under their inherent powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results." Id. at 564. The Supreme Court has furnished us with at least a partial list of a court's inherent powers. Employing its inherent powers, a court can control admission to its bar, discipline attorneys, punish for contempt, vacate its own judgment upon a finding of fraud, bar a criminal defendant from a courtroom for disruptive behavior, dismiss a suit on forum non conveniens grounds or for failure to prosecute, and assess attorney's fees. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991).

In Defendants' Motion for sanction pursuant to the Court's inherent powers, Defendants sought for sanction pursuant to the Court's inherent powers in addition to Rule 11 and 28 USC 1927.

In addition to those mentioned by the Supreme Court, other inherent powers include the power to fine, to disqualify counsel, to preclude claims or defenses, and to limit a litigant's future access to the courts. See Joseph, supra Section(s) 28, at 440-47; see also Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 n.10 (3d Cir. 1994) (listing the inherent powers available to a court). With these many bows in their sanctioning quivers, courts have frequently invoked their inherent powers "to regulate the conduct of the members of the bar as well as to provide tools for docket management." Eash, 757 at 561.

U.S. Supreme Court cautioned: "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. That "inherent powers are shielded from direct democratic controls" makes this exercise of restraint and discretion even more important. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

Applying this narrow approach to imposing Rule 11 sanctions, courts have consistently held that "the mere failure of a complaint to withstand a motion for summary judgment or a motion to dismiss should not be thought to establish a rule violation." Simmerman v. Corino, 27 F.3d. 58, 62 (3d. Cir. 1994); Tegg Corp. v. Beckstrom Elec. Co., 2008 U.S. Dist. LEXIS 100081, at *6-7 (W.D. Pa. Dec. 10, 2008).

A mere failure of a claim "to survive the motions to dismiss did not warrant the imposition of Rule 11 sanctions. The Court held: In addition, the motions for sanctions are overbroad in that they do not sufficiently delineate between which provisions of Rule 11 (b) were violated by Plaintiffs or their counsel and Rule 11 ( c )( 5) *expressly precludes the Court from imposing sanctions against Plaintiffs individually for a violation of Rule 11 (b )(2)* requiring that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." See

Fed. R. Civ. P. 1 l(c)(S)(A). n Kohar v. Wells Fargo, N.A., 2016 U.S. Dist. LEXIS 49599 (W.D. Pa. April 13, 2016),  Id. at * 16-1 7. *Emphasis added.*

sanction Motions are very serious matter implicating non-moving party's due process rights under the constitution. Eash v. Riggins Trucking, Inc., 757 F.2d 557, 570 (3d Cir. 1985) (noting that the imposition of a sanction on an attorney, including disbarment and other disciplinary actions, implicates due process concerns); cf. Roadway Express, Inc. v. Piper, 447 U.S. 752, 767 (1980) ("Like other sanctions, attorney's fees certainly should not be assessed *lightly or without fair notice* and an opportunity for a hearing on the record."); Rogal v. American Broad. Cos., 74 F.3d 40, 44 (3d Cir. 1996) ("The imposition of monetary sanctions by a court *implicates fundamental notions of due process. . . .*"). Emphasis added.  Although the precise contours of the process that is due varies given the particular context, "the fundamental requirements of due process — notice and an opportunity to respond — must be afforded before any sanction is imposed." Martin, 63 F.3d at 1261.

The party against whom sanctions are being considered is entitled to notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions. See Simmerman v. Corino, 27 F.3d 58, 64 (3d Cir. 1994). Without such notice, the opportunity to be heard would be meaningless: "[o]nly with this information can a party respond to the court's concerns in an *intelligent* manner." Id. In other words, a party cannot adequately defend himself against the imposition of sanctions unless he or she is aware of the issues that must be addressed to avoid the sanctions. As one treatise writer has explained, "[d]ramatic differences in the relief being considered by the district court may lead to substantially different (e.g., more detailed, differently directed) responses by the alleged offender." Gregory P. Joseph:  Sanctions: The Federal Law of Litigation Abuse Section(s) 17(D)(1)(d), at 343 (2d ed. 1994) (discussing Rule 11 sanctions in particular).

The Supreme Court of the United States has recognized the constitutional right to come into federal court and sue. Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 513 (1972) (recognizing that the right of access to the courts stems from the First Amendment's right to petition the government).

The right of access to the courts has been rooted in exercise that right while represented by an attorney. However, "[o]ne of the basic principles, one of the glories, of the American system of justice is that the courthouse door is open to everyone,"' NAACP v. Meese, 615 F. Supp. 200, 205-06 (D.D.C. 1985). Even those who choose to litigate their cases without assistance of counsel, Federal statutory law allows parties to "plead and conduct their own cases" as pro se litigants.' 28 U.S.C. § 1654 (2000). While the right to appear pro se currently is statutorily guaranteed, "[t]he right to represent oneself in the federal courts can be traced to medieval England" through the Magna Carta. Nina Ingwer VanWormer, Note, Help at Your Fingertips: A Twenty-First Century Response to the Pro Se Phenomenon, 60 VAND. L. REv. 983, 987 (2007). In re Tutu Wells Contamination Litig. United States Court of Appeals, Third Circuit. Jul 22, 1997. 120 F.3d 368 (3d Cir. 1997)

**Additionally, to impose sanction against such lousy attorney as the Attorneys for the Defendants for repeating the same wasteful motion drive for ridiculous call for santions against the Plaintiff simply because the Plaintiff has followed the Court's directives shows in full accordance with 28 USC 1927**. The original purpose of the statute was to control the practice of United States Attorneys. Because some United States Attorneys were paid by the number of lawsuits filed, they "filed unnecessary lawsuits to inflate their compensation." Roadway Express, Inc. v. Piper, 447 U.S. 752, 759 n.6 (1980). Congress wanted to limit "'multiplicity of suits or processes, where a single suit or process might suffice.' ' Id.

The language of the statute indicates that "[a]ny attorney or other person admitted to conduct cases... may be required by the court to satisfy personally." The language is clear that the offending attorney will be the financially responsible party. However, the statute also applies to "other person[s] admitted to conduct cases.' The statute does not indicate that litigants who appear pro se in federal courts are admitted to conduct cases. While scholars contend that lawyers are the only persons to whom 28 U.S.C. § 1927 may be applied. See JOSEPH, supra note 45, at 379 (noting that pro se litigants "are not 'admitted to conduct cases,' as § 1927 requires, but merely permitted by statute to 'conduct their own cases').

The Second Circuit has held that 28 U.S.C. § 1927 does not apply against pro se litigants. Therefore, the Second Circuit concluded that "the word 'admitted' . . . suggest[ed] application to those who, like attorneys, gain approval to appear in a lawyerlike capacity" Sassower v. Field, 973 F.2d 75 (2d Cir. 1992).

***Furthermore, the United States Supreme Court mentioned, without elaboration or "disagreement.... that section 1927 'applies only to attorneys.' Chambers v. NASCO, Inc., 501 U.S. 32, 41 (1991)). Emphasis added.***

In Defendants' Motion for sanction pursuant to the Court's inherent powers, Defendants sought for sanction pursuant to the Court's inherent powers in addition to Rule 11 and 28 USC 1927.

In Chambers v. NASCO, Inc., 501 U.S. 32 (1991), the Supreme Court discussed at length the inherent powers of a court to sanction and their relationship to rule-based and statute-based powers to sanction, e.g., Rule 11, Rule 16, Rule 37, and *Section(s) 1927*. The Court observed, but apparently did not require, that normally a court should look first to those rule-based or statute-based powers before turning to its inherent powers, reserving the inherent powers for instances in which the rule-based or statute-based powers are not "up to the task."

The permissible scope of inherent powers is somewhat unclear; we have earlier observed that "the notion of inherent power has been described as nebulous, and its bounds `shadowy.'" Eash v. Riggins Trucking Inc., 757 F.2d 557, 561 (3d Cir. 1985) (en banc) (citation omitted). However, "courts under their inherent powers have developed a wide range of tools to promote efficiency in their courtrooms and to achieve justice in their results." Id. at 564. The Supreme Court has furnished us with at least a partial list of a court's inherent powers. Employing its inherent powers, a court can control admission to its bar, discipline attorneys, punish for contempt, vacate its own judgment upon a finding of fraud, bar a criminal defendant from a courtroom for disruptive behavior, dismiss a suit on forum non conveniens grounds or for failure to prosecute, and assess attorney's fees. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-46 (1991).

In addition to those mentioned by the Supreme Court, other inherent powers include the power to fine, to disqualify counsel, to preclude claims or defenses, and to limit a litigant's future access to the courts. See Joseph, supra Section(s) 28, at 440-47; see also Republic of the Philippines v. Westinghouse Elec. Corp., 43 F.3d 65, 73 n.10 (3d Cir. 1994) (listing the inherent powers available to a court). With these many bows in their sanctioning quivers, courts have frequently invoked their inherent powers "to regulate the conduct of the members of the bar as well as to provide tools for docket management." Eash, 757 at 561.

U.S. Supreme Court cautioned: "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." Chambers, 501 U.S. at 44. That "inherent powers are shielded from direct democratic controls" makes this exercise of restraint and discretion even more important. Roadway Express, Inc. v. Piper, 447 U.S. 752, 764 (1980).

Though Circuits appear split, the black letters of Title 28 U.S.C. § 1927 is crystal clear: It does not apply to this Plaintiff as a pro se, but perfectly fit for the Attorneys for the Defendants. 28 USC 1927 allows a court to award "the excess costs, expenses, and attorneys' fees" from "[a]ny attorney or other person admitted to conduct cases.., who so multiplies the proceedings... unreasonably and vexatiously." 28 USC 1927 (2000), there as here.

**Conclusion**

Wherefore, in the foregoing, Plaintiff respectfully prays to this Honorable Court to instantly deny Defendants' Rule 11 and 28 USC 1927 Motion for Sanctions against Plaintiff in repetitive fashion in the light of what Defendants advocated, and for its complete frivolity.

Respectfully submitted by,

s/Ning Ye, Plaintiff
Dated: February 1, 2021
    Flushing, New York

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 1st day of February, 2021, a copy of the foregoing Opposition and the attached Memorandum was served upon Joseph Brenner, Esq. Counsel for the Defendants via this Court's ECF Broadcasting System.

_____
/s/Ning Ye, Esq.